**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **COLIN DEREK SAVAGE, #475786,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:21-cv-00521** |
| | ) | **Judge Trauger** |
| **WARDEN RAYMOND BYRD,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM**

## I. Introduction

In July of 2021, state inmate Colin Savage filed a pro se Petition for the Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) and paid the filing fee. (Doc. No. 7.) He challenges his 2010 conviction in Montgomery County, Tennessee, on charges of especially aggravated robbery and especially aggravated kidnapping, which resulted in a 48-year prison sentence. (Doc. No. 1 at 1.) After being directed to respond to the Petition, the respondent filed the transcript of proceedings in state court (Doc. No. 11) and an Answer. (Doc. No. 12.)

The petitioner did not file a reply to the Answer. Long after briefing had closed, he filed a motion to amend his Petition but failed to sign the motion, and then failed to act to correct this defect in accord with the court's order that he do so. (Doc. No. 16.) Accordingly, the court struck the petitioner's motion to amend from the record and deemed the Petition ripe for review on the merits, "[b]arring any future attempts to amend." (Doc. No. 17 at 2.) The petitioner objected to the striking of his motion to amend by stating that he signed and promptly returned the signature page to the court, and positing that his return mailing must have been lost. (Doc. No. 18.) However, he did not make any further effort to amend the Petition.

Upon review of the Petition, the Answer, and the state-court record, the court finds that an evidentiary hearing is not required to resolve this matter. *See Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (stating that evidentiary hearing is not required "if the record clearly indicates that the petitioner's claims are either barred from review or without merit"). As explained below, the petitioner is plainly not entitled to habeas relief, and the Petition will therefore be **DENIED**.

## II. Procedural History

The petitioner and two other men, Rodney Glover and John Privette, were indicted in 2009 and prosecuted separately on charges related to their conspiracy to break into the home of 92-year-old Oma England and steal her property. There were six counts lodged against the petitioner: (1) conspiracy to commit aggravated burglary; (2) aggravated burglary; (3) conspiracy to commit theft of property valued at $10,000 or more but less than $60,000; (4) especially aggravated robbery; (5) especially aggravated kidnapping; and (6) theft of property valued at $500 or less. (Doc. No. 11-1 at 5–7.) The petitioner pled guilty to counts 1, 2, 3, and 6. He was convicted by a jury on counts 4 and 5, after the jury heard testimony from witnesses including Mr. Glover, who testified for the prosecution after his own conviction but before his sentencing. The trial court sentenced the petitioner to 24 years on each of counts 4 and 5, and shorter sentences on the remaining counts. The longer sentences were ordered to run consecutively while the shorter ran concurrently with them, resulting in a 48-year term of imprisonment without earlier release eligibility. (*Id.* at 93–98.)

On direct appeal from these convictions and sentences, the Tennessee Court of Criminal Appeals (TCCA) affirmed. *State v. Savage*, No. M2011-00666-CCA-R3CD, 2012 WL 4054814 (Tenn. Crim. App. Sept. 17, 2012). In addressing the petitioner's claim that the evidence at trial was insufficient to support his convictions, the TCCA found that Mr. Glover had testified as an accomplice to the offenses committed by the petitioner. *Id.* at *12. The TCCA further found that

Glover's accomplice testimony against the petitioner was sufficiently corroborated by independent evidence that the jury could properly consider on the issue of whether the petitioner should be held criminally responsible for Glover's conduct.[1] *Id.* In any case, the TCCA ruled that "[t]he evidence in th[e] case is legally sufficient to convict [the petitioner] of both especially aggravated robbery and especially aggravated kidnapping[.]" *Id.* at *16. The Tennessee Supreme Court denied the petitioner's application for permission to appeal from the TCCA's decision. (Doc. No. 11-15.)

The petitioner timely filed a petition for post-conviction relief. The post-conviction trial court held an evidentiary hearing (Doc. No. 11-18) and issued a written order denying relief on the petitioner's claims. (Doc. No. 11-17 at 32–60.) The petitioner filed an appeal to the TCCA, claiming that his convictions were unconstitutional because he did not receive the effective assistance of trial counsel as guaranteed by the Sixth Amendment. The TCCA rejected those claims and affirmed the judgment of the post-conviction trial court. *Savage v. State*, No. M2019-01740-CCA-R3-PC, 2021 WL 1117031 (Tenn. Crim. App. Mar. 24, 2021). The petitioner did not seek permission to appeal to the Tennessee Supreme Court. Shortly after the dismissal of his post-conviction appeal, he filed his federal habeas petition in this court, wherein he raises the same claims of ineffective-assistance-of-trial-counsel that were before the TCCA.

## III. Facts

The following statement of facts is taken from the TCCA's decision on post-conviction appeal. In its summary, the TCCA first described the evidence and record at the petitioner's trial, as follows:

> On October 14, 2008, the Petitioner and his codefendant, Rodney Glover, pursuant to an established plan, unlawfully entered the home of ninety-two-year-old victim

---

[1] In Tennessee, an accused may be liable under a theory of criminal responsibility for the conduct of another if he "in some way associate[s] himself with the venture, act[s] with knowledge that an offense is to be committed, and share[s] in the criminal intent of the principal in the first degree." *Hembree v. State*, 546 S. W. 2d 235, 239 (Tenn. Crim. App. 1976).

Oma England. Upon entering the home, the Petitioner and Glover severely beat the victim, bound her hands and feet, and robbed her. Glover, who was awaiting sentencing after having been convicted of aggravated kidnapping, aggravated burglary, conspiracy to commit aggravated burglary, and conspiracy to commit theft of property valued at $10,000 or more for his actions in this case, specifically testified that the Petitioner hit the victim twice with a nightstick taken from the victim's home. The partial deoxyribonucleic acid (DNA) profile obtained from a latex glove found in the victim's laundry room and the partial DNA profile obtained from a piece of a latex glove found on the victim's steps were consistent with the Petitioner's DNA. In addition, the DNA profile obtained from a cigarette butt found inside the victim's home matched the Petitioner's DNA. Several items of the victim's property, including gold flatware, jewelry, and a coin collection, were found on the Petitioner's property. The victim's nightstick was found at the home of Teresa Harley, with whom Glover resided in Georgia. Although tests indicated the presence of DNA on the nightstick, the test results were inconclusive due to insufficient or degraded DNA. Joseph DeMaio, a fellow inmate of both the Petitioner and Glover, testified that Glover told him he tied up the victim with a telephone cord during the incident.[2]

At the beginning of the Petitioner's August 16, 2010 trial, the State read the indictment, and when the trial court asked for the Petitioner's plea to each of the counts, trial counsel made the following statement in the presence of the jury:

> Count One is an allegation of conspiracy to [commit] aggravated burglary and [the Petitioner] pleads guilty.

> Count Two is an allegation of aggravated burglary and he pleads guilty.

> Count Three i[s] an allegation of conspiracy to [commit] theft [of property valued] over ten thousand dollars and he pleads guilty.

> Count Four is an allegation of especially aggravated robbery and he pleads not guilty.

> Count Five is an allegation of especially aggravated kidnapping and he pleads not guilty.

> Count Six is an allegation of theft [of property valued] under five hundred dollars and he pleads guilty.

Thereafter, four of the State's witnesses testified at the Petitioner's trial, and at the conclusion of this testimony, the trial court dismissed the jury for the night. Then, in a hearing outside the presence of the jury, the trial court and trial counsel had the following exchange:

---

[2] A more fulsome description of the evidence introduced at trial is contained in the TCCA's decision on direct appeal. *See State v. Savage*, 2012 WL 4054814, at *1–9.

4

Trial court: [Trial counsel], you have entered pleas of guilty on behalf of your client to several of these charges. I don't think I have ever had that occur before[.] So does that mean that he is guilty of those [charges] and I do not submit those to the jury?

Trial counsel: I haven't done it either. I did it—it was a tactical decision, but have I ever done it on some and not all of them, no. Here is [the Petitioner] if you want to go through the coll[o]quy with respect to the four counts that I have already told the jury he was guilty of? We could do that now, we could do it in the morning? And you could, if you chose, to withdraw those counts from the jury? I don't know what the State's position is on that? It may be confusing? Maybe we can put a jury instruction that the Court has already accepted his guilty pleas on those four [counts], just something like that?

. . .

Trial court: I guess to me ... the best thing to do is to [go] through that with [the Petitioner] and make sure that he understands what he is doing—

Trial counsel: Yes sir.

Trial court: [T]hen it will not be a jury question and I will take those [counts] out of the charge and substitute—

Trial counsel: Substitute just a paragraph—

Trial court: That he pled guilty to these [counts] and you are not to make a decision on those?

Trial counsel: Yes sir.

Trial court: Words to that effect. Leaving then, the especially aggravated kidnapping and the especially aggravated robbery?

Trial counsel: Yes sir.

*Savage v. State*, 2021 WL 1117031, at *1–3. The TCCA then described the trial court's colloquy with the petitioner outside the presence of the jury, which established his consent to the entry of guilty pleas on Counts 1, 2, 3, and 6 and his knowledge of the consequences of such pleas. *Id.* at *2–3. The petitioner acknowledged before the trial court that he "[v]ery much" understood the

5

finality of his guilty pleas and their implications for his future. *Id.* at *3. The trial court therefore accepted the guilty pleas on these counts and proceeded to try the petitioner on Counts 4 and 5, of which the jury found him guilty. *Id.*

The TCCA next described the evidence and proceedings on post-conviction review, as follows:

> On January 15, 2014, the Petitioner, represented by counsel, timely filed a petition for post-conviction relief, alleging that trial counsel provided ineffective assistance in a number of ways. After the Petitioner's attorney and five other attorneys appointed to the Petitioner's case were allowed to withdraw, the Petitioner's family hired post-conviction counsel, who filed an amended petition for post-conviction relief, alleging in part that trial counsel was ineffective in advising the Petitioner to enter his guilty pleas in the presence of the jury, in failing to object to the admission of the nightstick, in failing to call Teresa Harley to testify at trial, and in failing to impeach Rodney Glover. The post-conviction court later determined that the Petitioner was indigent and appointed post-conviction counsel to continue representing him.

> At the July 12, 2019 post-conviction hearing, the Petitioner testified that trial counsel never objected to the introduction of the nightstick, even though there was no useful DNA on it. He claimed there was no evidence establishing the nightstick's relevance, other than codefendant Rodney Glover's testimony that the Petitioner had used the nightstick to hit the victim. Although the Petitioner acknowledged going with Glover to the victim's home, he claimed that Glover had beaten the victim.

> The Petitioner also asserted that trial counsel never called Teresa Harley to testify at trial. He claimed Harley could have rebutted Glover's testimony about the nightstick by stating that Glover left the nightstick at her home and that she overheard Glover tell John Privette about what he had done to the victim.

> In addition, the Petitioner claimed that trial counsel failed to impeach Glover with his criminal history. He asserted that Glover had "a very extensive criminal record" and that "the latest thing," he thought, was Glover's conviction for "vehicular homicide." The Petitioner also stated that trial counsel never cross-examined Glover about the number of times he put his hands on the victim or about the incriminating statements that Glover had made to Joseph DeMaio. He said that Glover told DeMaio that he did not want "to go down alone" in this case but that the jury was never informed of this statement. The Petitioner also said trial counsel neglected to emphasize the lack of evidence corroborating Glover's testimony.

> . . .

6

The Petitioner said trial counsel announced that he was entering guilty pleas to four of the charged offenses at the beginning of trial. However, he claimed he had "no clue" why trial counsel made this announcement in the presence of the jury. He said he did not remember trial counsel ever informing him of the prejudicial implications of entering these guilty pleas in the presence of the jury at the beginning of his trial.

The Petitioner admitted that he had wanted Teresa Harley to testify to everything codefendant Glover had done during the incident with the victim but not to testify about the Petitioner's involvement in the victim's burglary.

The Petitioner acknowledged that after the State had presented some proof at trial, the trial court had a hearing outside the presence of the jury wherein he entered his guilty pleas to Counts 1, 2, 3, and 6. He said that during this hearing, the court asked him if he understood that he had a right to proceed in this jury trial on all counts, and he replied, "Yes, sir." He also admitted that the court asked him if he understood that, by entering his guilty pleas, the court would find him guilty of the offenses in those counts and the jury would not be determining his guilt for those offenses, and he replied, "Yes, sir." The Petitioner claimed that he merely followed the advice of trial counsel when he entered his guilty pleas and denied that he and trial counsel discussed his guilty pleas before he entered them. The Petitioner said that although the trial transcript showed that he said he understood the consequences of pleading guilty and wanted to enter his guilty pleas, he claimed he pled guilty based on a "spur of the moment thing" that trial counsel "came up with" and that he did not understand what was happening.

Teresa Harley testified that she lived near the Petitioner in Georgia. She said that after these crimes occurred, she saw Rodney Glover, who admitted that he had "tied the [victim] up[,]" and had done "the beating[,]" and that the Petitioner had run away. She said that Glover brought the victim's belongings, including a sterling silver set, a fur coat, and the nightstick, to her home and then the Petitioner and Glover split the proceeds of their crimes while at her house.

Harley said that although she was available to testify at trial, she was never called as a witness because they said she "wasn't needed[,]" even though she "took time off from work" and "came all the way up here." Harley admitted that she used methamphetamine at the time of these offenses. She knew that the Petitioner also used methamphetamine but denied that the Petitioner had ever provided her with methamphetamine.

. . .

Trial counsel [testified] that by the time of trial, he knew that the Petitioner's DNA had been found at the crime scene and that some of the victim's property had been found in the Petitioner's backyard. In light of this damaging evidence, trial counsel talked to the Petitioner the morning of trial about employing a defense strategy

wherein the Petitioner entered guilty pleas to the four less serious charges in the jury's presence in order to gain credibility. He said that after he and the Petitioner discussed this defense strategy, the Petitioner approved the strategy. Trial counsel acknowledged that this strategy ran the risk of making the Petitioner appear guilty of all the charges to the jury; however, he said there was also a risk that the jury would convict the Petitioner of everything "if we didn't own up to something[.]" He explained that given the amount of evidence connecting the Petitioner to the crimes, he was "trying to seek some credibility with the jury."

Trial counsel asserted that there was a jailhouse recording of a conversation between the Petitioner and Teresa Harley or the Petitioner's girlfriend, Ashley Reynolds, wherein the Petitioner wanted to remind Harley that she overheard Glover talking about tying up and beating the victim. Two jailhouse recordings of conversations between the Petitioner and Reynolds were entered as exhibits during the post-conviction hearing. In one of these recordings, the Petitioner told Reynolds to remind Harley to tell [trial counsel] that she heard Glover talking about tying up and beating the victim so Harley could be a witness at trial and keep him from spending substantial time in prison. In the other recording, the Petitioner told Reynolds that he wanted Harley to talk about what she heard Glover say about the incident but wanted Harley to "exclude" any mention of the Petitioner's involvement in these crimes when she talked to [trial counsel].

Trial counsel said that based upon his investigation, there was no one from Georgia, including Teresa Harley, who would have been helpful to the Petitioner at trial, and he informed the Petitioner of this fact. Trial counsel added that he advised the Petitioner that there would not be testimony at trial from Ashley Reynolds, Teresa Harley, or anyone else.

Trial counsel acknowledged that if Harley had testified that she heard Glover say that he beat up the victim, it would have been helpful. He also admitted he did not object to the introduction of the nightstick at trial, which was inconclusive as to DNA. However, he stated that the nightstick was "arguably relevant" and admissible because the victim had been beaten with an object that matched the description of the nightstick.

*Savage v. State*, 2021 WL 1117031, at *4–6.

## IV. Claims of the Petition

The Petition asserts the following claims to habeas relief:

1.     Trial counsel was ineffective in failing to call Teresa Harley as a defense witness.

8

2.      Trial counsel was ineffective in failing to cross-examine Rodney Glover concerning Glover's criminal record and the number of times Glover put his hands on the victim.

3.      Trial counsel was ineffective in announcing Petitioner's guilty pleas on Counts 1, 2, 3, and 6 in the presence of the jury.

4.      Trial counsel was ineffective in failing to object to the introduction of the nightstick into evidence.

(Doc. No. 1 at 14.)

**V. Analysis**

   A. Legal Standard

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Upon finding a constitutional error on habeas corpus review, a federal court may only grant relief if it finds that the error "had substantial and injurious effect or influence" upon the conviction. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Peterson v. Warren*, 311 F. App'x 798, 803–04 (6th Cir. 2009).

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases . . . and 'to further the principles of comity, finality, and federalism.'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 436 (2000)). AEDPA's requirements "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007) (citations omitted). As the Supreme Court has explained,

AEDPA's requirements reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). Prior to the passage of AEDPA, district courts applied de novo review to determine whether "the relevant state court had erred on a question of constitutional law or on a mixed constitutional question." *Williams v. Taylor*, 529 U.S. 362, 402 (2000) (O'Connor, J., concurring). But now, where state courts have ruled on the merits of a claim, AEDPA imposes "a substantially higher threshold" for obtaining relief than a de novo review of whether the state court's determination was incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).

Specifically, a federal court may not grant habeas relief on a claim rejected on the merits in state court unless the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). The Supreme Court has repeatedly held "that AEDPA, by setting forth [these] necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" *White v. Wheeler*, 577 U.S. 73, 77 (2015) (quoting *Burt v. Titlow*, 571 U.S. 12, 19 (2013)).

A state court's legal decision is "contrary to" clearly established federal law under Section 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13.

10

An "unreasonable application" under this subsection occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *White v. Woodall*, 572 U.S. 415, 426 (2014). A state court decision is not unreasonable under this standard simply because the federal court, "in its independent judgment," finds it erroneous or incorrect. *Williams*, 529 U.S. at 411. Rather, to be actionable under Section 2254(d)(1), the state court's decision "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *Woodall*, 572 U.S. at 419). An objectively unreasonable decision is one "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

Similarly, a federal habeas court may not find a state court's factual determination to be unreasonable under Section 2254(d)(2) simply because it disagrees with the determination. *Young v. Hofbauer*, 52 F. App'x 234, 237 (6th Cir. 2002). Rather, the determination must be "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)) (internal quotation marks omitted). Moreover, a state court's factual determinations "shall be presumed to be correct", and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Davis v. Ayala*, 576 U.S. 257, 271 (2015) ("State-court factual findings . . . are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting *Rice v. Collins*, 546 U.S. 333, 338–39 (2006)). Finally, the petitioner may

not prevail under Section 2254(d)(2) simply by showing that a fact was unreasonably determined; he "must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).

AEDPA's standard for granting relief on a claim rejected on the merits by a state court "is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Richter*, 562 U.S. at 102, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). This standard "was meant to be" a high hurdle for petitioners, consistent with the principle that habeas corpus functions as a guard against only "extreme malfunctions" in the state's administration of criminal justice. *Harrington*, 562 U.S. at 102; *see also Woods*, 575 U.S. at 316.

Review under AEDPA is not only demanding, but also ordinarily unavailable to state inmates who have not fully exhausted their remedies in the state court system. Sections 2254(b) and (c) provide that, subject to certain exceptions, a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless the prisoner has presented the same claim sought to be redressed in a federal habeas court to the state courts. *Pinholster*, 563 U.S. at 182; *Kelly v. Lazaroff*, 846 F.3d 819, 828 (6th Cir. 2017) (quoting *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009)) (federal claim is exhausted if it was presented "under the same theory" in state court). A habeas petition is thus fully exhausted if each and every claim was first fairly presented to the state appellate court[3] as a federal constitutional claim in substance, if not explicitly. *See Gray v. Netherland*, 518 U.S. 152, 162–63 (1996); *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987)

---

[3] In Tennessee, the Court of Criminal Appeals is the highest appellate court to which appeal must be taken in order to properly exhaust a claim. *See* Tenn. Sup. Ct. R. 39; *Adams v. Holland*, 330 F.3d 398, 402–03 (6th Cir. 2003).

(requiring the presentation of "the legal and factual substance of every claim to all levels of state court review").

    B. <u>Review of the Petition</u>

        1. Compliance with Pleading Requirements

The respondent's first argument in opposition to the petitioner's claims is that they are insufficiently pled. (*See* Doc. No. 12 at 11.) The court agrees.

The Petition effectively re-raises the ineffective-assistance claims asserted in the petitioner's post-conviction appellate brief (*see* Doc. No. 11-21), albeit in conclusory fashion. Indeed, while the Petition contains a thorough description of the boilerplate law governing review under Section 2254 and the requirements for establishing a violation of the Sixth Amendment right to counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), it is bereft of any *facts* to support the petitioner's claims that such violations occurred during his trial. As explained above, AEDPA ultimately requires the petitioner to show that the TCCA decided his exhausted ineffective-assistance claims by applying *Strickland* in a way that was objectively unreasonable, or by relying on factual findings that he can prove to be incorrect by reference to clear and convincing, contrary evidence. In order to allow some basis for inferring that the petitioner's attempt to clear this hurdle might possibly succeed, the Petition "must allege the factual underpinning of the petitioner's claims." *McFarland v. Scott*, 512 U.S. 849, 860 (1994) (O'Connor, J., concurring in the judgment in part and dissenting in part) (citing Habeas Corpus Rule 2(c)).

The first part of the Petition in this case is a Section 2254 pleading form in which the petitioner merely identifies ineffective assistance of counsel as the ground for relief he pursued during state post-conviction proceedings and the ground he pursues here, while directing the reader to "see supporting facts in the attached habeas corpus petition." (Doc. No. 1 at 4.) This skeletal

first part is followed by a separately captioned "memorandum of points and authorities in support" of the petitioner's request for habeas relief. (*Id.* at 8–17.)[4] After a boilerplate discussion of the governing law, part two of the Petition contains only the following attempt to specify the ineffective-assistance claim generally asserted in part one:

> Petitioner's trial counsel failed to render the effective assistance of counsel in the following ways:
>
> (1) Defense counsel failed to provide effective assistance as a result of not calling Teresa Harley to testify on his behalf. At the post-conviction hearing, Teresa Harley testified that the co-defendant, Rodney Glover, told her that he had tied up the victim and that Glover brought the cell phone, night stick, silver, and fur coat to the house occupied by Ms. Harley.
>
> (2) Defense counsel failed to cross-examine the co-defendant, Rodney Glover, as to his own criminal record, and as to how many times Glover put his hands on the victim.
>
> (3) Counsel provided ineffective assistance by his decision to announce Petitioner's guilty pleas to four counts of the indictment in the presence of the jury at the beginning of his trial.
>
> (4) Counsel failed to object to the introduction of the nightstick that was taken from the victim's residence.
>
> Petitioner submits that the above failures by his counsel amounted to the ineffective assistance of counsel in violation of U.S. Const. Amends. 6, 14.
> . . .
>
> In this case, Petitioner asserts that the cumulative effect of the above errors by counsel prejudiced him and undermined the confidence in the outcome of the trial. He contends that absent the errors by trial counsel, the fact finder would have had a reasonable doubt respecting guilt.

(Doc. No. 1 at 14–15.)

Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Court ("Habeas Rules") requires more than the Petition provides. Prior to the enactment of Rule 2(c),

---

[4] Another "Petition for Writ of Habeas Corpus; Memorandum of Points and Authorities in Support" was filed along with the Petition, but this additional filing consists of only a "Table of Contents" and a "Table of Authorities," without any allegations of fact or legal arguments. (Doc. No. 2.)

habeas petitions "frequently contained mere conclusions of law, unsupported by any facts," but "Rule 2(c) is more demanding." *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (citation omitted). As has been previously recognized upon review of a pro se habeas petition in this court,

> Habeas Corpus Rule 2(c) requires that a petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground[.]" Habeas Corpus R. 2(c)(1), (2). This rule "deviates from the 'notice pleading' rules applicable in other federal civil cases" and "mandates that the petitioner at least summarily plead specific facts supporting each claim for relief." 1 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice & Procedure § 11.6 (7th ed. updated Dec. 2021). A habeas petition that "contain[s] mere conclusions of law, unsupported by any facts" is "obviously deficient" because "it is the relationship of the facts to the claim asserted that is important[.]" Habeas Corpus R. 2(c) advisory committee's note to 1976 adoption. A petitioner's failure to fulfill the pleading requirements of Habeas Rule 2(c) provides an appropriate basis for dismissal. *See*, *e.g.*, *Guerrero v. Ford*, No. 1:17-cv-00103, 2019 WL 330878, at *12 (M.D. Tenn. Jan. 25, 2019) (dismissing claim under Habeas Rule 2(c) where petitioner "d[id] not set forth any facts to support his allegation . . ."); *Creech v. Taylor*, Civ. Action No. 13-165, 2013 WL 6044359, at *2 (E.D. Ky. Nov. 14, 2013) (dismissing habeas petition containing only "[c]onclusory allegations with no accompanying evidentiary support"); *Morris v. Motley*, No. 3:07-CV-P420-S, 2007 WL 3171538, at *1 (W.D. Ky. Oct. 26, 2007) (dismissing habeas petition lacking factual allegations or other specifics).

*Grimes v. Mays*, No. 3:19-cv-00585, Doc. No. 44 at 15 (M.D. Tenn. Aug. 19, 2022), *adopted*, Doc. No. 45 (M.D. Tenn. Sept. 7, 2022).

The liberal construction generally owed to pro se pleadings does not require this court to scour the record in order to flesh out the bare bones of the Petition with supporting factual material. *See id.* at 16–17 (citing *Adams v. Armontrout*, 897 F.2d 332, 333 (8th Cir. 1990), and *Mills v. Larose*, No. 1:13CV1059, 2015 WL 687829, at *11 (N.D. Ohio Feb. 18, 2015)); *see also Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001) ("Liberal construction does not require a court to conjure allegations on a litigant's behalf[.]"). The Petition in this case re-presents claims that were denied on their merits in state court, but in conclusory fashion, without the support of sufficient facts or other references to indicate how the state court may have gotten it wrong vis-à-vis

15

AEDPA's standards. *See Morris v. Motley*, No. 3:07-CV-P420-S, 2007 WL 3171538, at *1 (W.D. Ky. Oct. 26, 2007) (assessing sufficiency of petition's allegations "to satisfy either condition for granting the writ set forth in § 2254(d)"). The Petition does not attach or incorporate by explicit reference any prior presentation of these claims that may suffice for these purposes. *See Dye v. Hofbauer*, 546 U.S. 1, 4 (2005) (finding that habeas petition was not too vague and general because it "made clear and repeated references to an appended supporting brief", which presented claims with particularity); *Ramey v. Davis*, 942 F.3d 241, 248–49 (5th Cir. 2019). It thus fails to meet the demands of Habeas Rule 2(c), and is subject to dismissal for this procedural reason. *See Smith v. Litteral*, No. 0:17-CV-04-WOB, 2020 WL 1282508, at *5 (E.D. Ky. Feb. 21, 2020), *adopted*, 2020 WL 1276083 (E.D. Ky. Mar. 17, 2020) ("Statements of 'generalizations and conclusions' are insufficient, and 'notice' pleadings are not accepted in habeas corpus proceedings.") (citation omitted). Nevertheless, in an abundance of caution and considering the petitioner's pro se status, the court will review the merits of his claims.

### 2. Merits of the Petition's Claims

Ineffective assistance claims are properly analyzed under the two-prong standard of *Strickland v. Washington*, which asks: (1) whether counsel was deficient in representing the petitioner; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the petitioner of a fair trial. 466 U.S. at 687. To meet the first prong, the petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness" and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [he] must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 688–89 (quoting *Michel v. State of La.*, 350 U.S. 91, 101 (1955)). The "prejudice" component of the claim "focuses on the question of whether

16

counsel's deficient performance renders the result of the . . . proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). It requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Where, as here, exhausted claims of ineffective assistance of counsel are raised in a federal habeas petition, review under AEDPA is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009), in that "*Strickland* requires deference to counsel and AEDPA requires deference to the state court." *Moody v. Parris*, No. 20-5299, 2022 WL 3788503, at *4 (6th Cir. Aug. 30, 2022). The question then is not whether the petitioner's counsel was ineffective; rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

In this case, the TCCA analyzed the petitioner's four ineffective-assistance claims under *Strickland. See Savage v. State*, 2021 WL 1117031, at *10–13. With respect to counsel's failure to call Teresa Harley as a witness, the TCCA found as follows:

> [T]he Petitioner argues that trial counsel was ineffective in failing to call Teresa Harley as a defense witness at trial. He claims Harley could have testified that Glover, not the Petitioner, had the nightstick and that Glover admitted that he bound the victim's hands and feet and beat the victim. As support for this claim of ineffectiveness, the Petitioner claims that trial counsel admitted at the post-conviction hearing that Harley's testimony would have proven helpful.
>
> Initially, the Petitioner has failed to show that Harley's testimony about Glover's statements would [have] been admissible, given that such testimony is hearsay for which no exception applies. *See* Tenn. R. Evid. 802, 803. Moreover, at the post-conviction hearing, two jailhouse recordings of conversations between the Petitioner and his girlfriend Ashley Reynolds were admitted, wherein the Petitioner told Reynolds to remind Teresa Harley that she overheard Glover talking about tying up and beating the victim. Trial counsel referenced these recordings and testified that after conducting his own investigation, it was clear that there was no one in Georgia, including Teresa Harley, who could provide helpful evidence in the

17

Petitioner's case, and he informed the Petitioner of this fact. Our review of two jailhouse recordings casts serious doubt on whether Harley actually overheard Glover making these admissions or whether the Petitioner merely pressured Harley to make this claim[]. These recordings also show that while the Petitioner wanted Harley to tell his attorney about Glover's acts, he also wanted Harley to "exclude" any discussion of the Petitioner's involvement in these crimes. Most importantly, even if Harley had somehow been allowed to testify to Glover's admissions, a rational jury would have held the Petitioner accountable for Glover's actions under the theory of criminal responsibility. *See* Tenn. Code Ann. § 39-11-402; *Colin D. Savage*, 2012 WL 4054814, at *12, *15 (concluding that the evidence was sufficient to support the Petitioner's convictions for especially aggravated kidnapping and especially aggravated robbery because either the Petitioner, or Glover, for whom the Petitioner was criminally responsible, hit the victim several times with the nightstick, which kept her immobile and caused her serious bodily injury). Because the Petitioner has failed to establish that trial counsel's performance as to this issue was deficient, he is not entitled to relief.

*Id.* at *12. This determination was objectively reasonable in light of the post-conviction evidence. Although the Petition implies that Harley's testimony as to what Glover told her—"that [Glover] had tied up the victim and that Glover brought the cell phone, night stick, silver, and fur coat to the house occupied by Ms. Harley" (Doc. No. 1 at 14)—would have been of great benefit to the petitioner, such testimony (if it survived a hearsay objection) would have opened the door to the admission of potentially damaging evidence: the jail recordings that reflected the petitioner's desire to influence Harley not to report any of Glover's statements that implicated the petitioner. And even if that door were not opened, any distinction that Harley's testimony might have drawn between the petitioner's misconduct and Glover's misconduct would have been substantially, if not entirely, mitigated by the jury charge on criminal responsibility. The TCCA reasonably applied *Strickland*'s deficient-performance standard and found that counsel was not ineffective in failing to call Harley to testify. Accordingly, this ineffective-assistance claim has no merit.

With respect to counsel's failure to cross-examine Glover as to his criminal record or the number of times he put hands on the victim, the TCCA found as follows:

18

[T]he Petitioner argues that trial counsel was ineffective in failing to impeach Rodney Glover's "self-serving" testimony. The Petitioner asserts that trial counsel should have impeached Glover with his extensive criminal history. He also claims trial counsel should have impeached Glover by highlighting the absence of evidence corroborating Glover's claim that the Petitioner struck the victim twice with the nightstick.

At the post-conviction hearing, the Petitioner never questioned trial counsel about his failure to ask Glover about his criminal record. The only proof presented about Glover's record was Petitioner's vague and uncorroborated testimony that Glover had recently been convicted of vehicular homicide. Therefore, we agree with the State that the Petitioner failed to prove by clear and convincing evidence that co-defendant Glover had a criminal record. Tenn. Code Ann. § 40-30-110(f); *see* Tenn. Sup. Ct. R. 28, § 8(D)(1); *Nesbit*, 452 S.W.3d at 786. Even if we assume that the claim about Glover's criminal history is true, the Petitioner has failed to show that Glover's impeachment regarding his criminal record would have changed the outcome of the Petitioner's trial, particularly in light of the overwhelming evidence of the Petitioner's guilt.

As to the lack of evidence corroborating Glover's testimony, we note that there was abundant proof establishing that the Petitioner was present at the scene of the crime, including the Petitioner's DNA at the victim's home and the victim's property found in the Petitioner's backyard. We note that evidence was admitted at the Petitioner's trial showing that the DNA on the nightstick, which was degraded, did not connect the Petitioner to it and that the nightstick had been actually recovered from Glover's home, not the Petitioner's home. Even if the jury determined that Glover struck the victim with the nightstick, the Petitioner was accountable for Glover's acts against the victim under the theory of criminal responsibility. Because the Petitioner has failed to establish that trial counsel's performance regarding these issues was deficient, he is not entitled to relief.

*Savage v. State*, 2021 WL 1117031, at *12–13. The TCCA reasonably applied *Strickland* to conclude that, even overlooking the petitioner's failure to develop the post-conviction record with regard to Glover's alleged criminal history, the missed opportunity to impeach Glover with that history, or to question him further about his testimony that he held the victim's hands but did not strike her, did not amount to deficient performance or result in prejudice to the petitioner. This is because the forensic and testimonial evidence at trial firmly established that the petitioner was present with Glover and participated in the home invasion, that one or the other of them struck

19

heavy blows to the victim's upper body, and that the petitioner could be held criminally responsible for Glover's actions. This ineffective-assistance claim has no merit.

With respect to counsel's announcement of the petitioner's guilty pleas in front of the jury, the TCCA found as follows:

> [T]he Petitioner contends that trial counsel's decision to announce his guilty pleas to four counts in the presence of the jury at the beginning of his trial was ineffective. He asserts that the effect of these guilty pleas "constituted evidence of crimes committed by [the Petitioner] against the very same victim, at the very same time, and at the very same property as the alleged crimes of especially aggravated robbery and especially aggravated kidnapping," even though such evidence is overwhelmingly disallowed under Rule 404(b) as propensity evidence. The Petitioner claims "despite the highly prejudicial effect of the guilty pleas[,]" trial counsel "made absolutely no efforts to secure the entry of those pleas[ ] outside the presence of the jury, as required by Tenn. R. Evid. 404(b)." Moreover, the Petitioner maintains that his admission of guilt to four of the six crimes "facilitated the jury's inferences of guilt as to the two remaining offenses" that were tried. He claims that because he had "no knowledge as to the proper procedure for the entry of a partial guilty plea," he "took the advice" of trial counsel, which proved to be "not good." He also asserts that trial counsel's failure to enter his guilty pleas outside the presence of the jury prejudiced him by denying his right to a fair trial.

> The transcript from the Petitioner's trial shows that after the State read the indictment, the trial court asked for the Petitioner's pleas, and trial counsel, in the presence of the jury, replied that the Petitioner was pleading guilty to conspiracy to commit aggravated burglary in Count 1, aggravated burglary in Count 2, conspiracy to commit theft of property valued at $10,000 or more in Count 3, and theft of property valued at $500 or less in Count 6; however, trial counsel stated that the Petitioner was pleading not guilty to especially aggravated robbery in Count 4 and especially aggravated kidnapping in Count 5.

> At the post-conviction hearing, trial counsel testified that he and the Petitioner discussed the defense strategy of announcing his guilty pleas to four of the less serious charges in the jury's presence in order for the Petitioner to gain credibility with the jury for his trial on the remaining charges and to explain why the victim's property was found in the Petitioner's backyard. Trial counsel said that at the conclusion of this discussion, the Petitioner approved this strategy. The record shows that this strategy supported the defense theory that while the Petitioner burglarized the victim's home, the Petitioner did not bind the victim's hands and feet and did not beat the victim. The Petitioner, by entering guilty pleas to the less serious charges, attempted to minimize his culpability for the charges of especially aggravated robbery and especially aggravated kidnapping. Our review of the record shows that the Petitioner's guilty pleas in this case were made for the tactical

20

purpose of cementing this defense theory in the jurors' minds. We conclude that, while ultimately unsuccessful, trial counsel's strategy was reasonable in light of the strong evidence placing the Petitioner at the victim's home at the time of the offenses. *See Nesbit*, 452 S.W.3d at 796 ("The fact that a particular strategy or tactical decision failed does not by itself establish deficiency."). In reaching this conclusion, we note that the record shows the Petitioner was fully advised of this strategy and approved it before it was implemented at trial. Because the Petitioner has failed to show that trial counsel's performance regarding the guilty pleas was deficient, he is not entitled to relief on this issue.

*Id.* at *10–11. The TCCA reasonably applied *Strickland* to conclude that the announcement of guilty pleas to less serious offenses comported with the risky but not unreasonable strategy of seeking to persuade the jury that, while the petitioner engaged in some criminal behavior, he did not commit the "especially aggravated" offenses that involved physically restraining and injuring the victim. According to the TCCA, counsel's risk in employing this strategy was worth taking because the petitioner could not hope to overcome the evidence that placed him in the victim's home (with co-conspirator Glover) at the time of the offenses. The petitioner agreed to this strategy, and the fact that his admission of guilt to four offenses did not persuade the jury to acquit him of the remaining two does not mean that the plea-announcement strategy was unreasonable, or that it rendered his trial on the remaining charges fundamentally unfair. *Compare Pinto v. Pierce*, 389 U.S. 31, 32–33 (1967) (finding that voluntariness of defendant's confession could be determined in jury's presence without violating defendant's rights, where neither defendant nor defense counsel objected); *Brant v. Scafati*, 301 F. Supp. 1374, 1378–79 (D. Mass. 1969) (finding that petitioner was not denied a fair trial after co-defendant pled guilty in front of jury because, despite "real danger" that jury might infer petitioner's guilt from co-defendant's plea, any resulting prejudice "was not so great as to have been of federal constitutional importance"). The TCCA reasonably applied the *Strickland* standard and found that counsel did not perform deficiently. The petitioner's claim to the contrary is without merit.

Finally, with respect to counsel's failure to object to the introduction into evidence of the nightstick, tthe TCCA found as follows:

> [T]he Petitioner contends that trial counsel was ineffective in failing to object to the admission of the nightstick at trial. We note that the nightstick was clearly relevant—the nightstick was taken from the victim's home, was found at Glover's home, was consistent with the type of object used to inflict the victim's injuries, and was included in Glover's testimony as the weapon the Petitioner used against the victim. *See* Tenn. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Moreover, we agree with the State that trial counsel's decision not to object to [the] nightstick was a strategic decision entitled to deference. At the Petitioner's trial, Special Agent Shipman with the Tennessee Bureau of Investigation testified that she was unable to find the Petitioner's DNA on the nightstick due to "insufficient or degraded DNA," and Detective Finley testified that the nightstick was found at the home where Glover resided with Teresa Harley. *See Colin D. Savage*, 2012 WL 4054814, at *7-8. This testimony tangentially supported the defense theory that the Petitioner was not the individual who beat the victim with the nightstick and reinforced the likelihood of jury nullification, where the jury would find the Petitioner not guilty of the charges of especially aggravated robbery and especially aggravated kidnapping, despite the evidence supporting the Petitioner's guilt based on his own acts and the fact that he was criminally responsible for Glover's actions. *See* Tenn. Code Ann. § 39-11-402 ("A person is criminally responsible for an offense committed by the conduct of another, if ... [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]"). Because trial counsel's failure to object to the nightstick was very reasonable under these circumstances, we conclude the Petitioner has failed to establish that trial counsel's performance was deficient.

*Savage v. State*, 2021 WL 1117031, at *11. The TCCA reasonably applied *Strickland* here. Although proffered by the State as the weapon used to batter the elderly victim, the nightstick was not connected to the petitioner by DNA evidence or by proof—other than Glover's testimony—that he possessed it during or after the commission of these crimes. The TCCA thus reasonably determined that the jury's ability to consider the nightstick could have benefitted the petitioner's case for jury nullification, because other evidence (in particular, the evidence of its recovery at Glover's residence) linked it more strongly to Glover than to the petitioner. Under such

22

circumstances, the TCCA properly determined that it was "very reasonable" for trial counsel not to object to the nightstick's admission. *Id.* This ineffective-assistance claim has no merit.

## IV. Conclusion

For the foregoing reasons, the Petition will be **DENIED** and this action will be **DISMISSED** with prejudice.

The court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Gov'g § 2254 Cases. A petitioner may not take an appeal unless a district or circuit judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citations and internal quotation marks omitted). "[A] COA does not require a showing that the appeal will succeed," but courts should not issue a COA as a matter of course. *Id.* at 337.

Because reasonable jurists could not debate whether the petitioner's claims should have been resolved differently or are deserving of encouragement to proceed further, the court will **DENY** a COA. The petitioner may seek a COA directly from the Sixth Circuit Court of Appeals. Rule 11(a), Rules Gov'g § 2254 Cases.

An appropriate order will enter.

Aleta A. Trauger
United States District Judge